# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| TAMMIE D. SOUCY, individually and as personal representative of the estate of BRYAN SOUCY, | ) ) ) ) |
| Plaintiff, | ) Civil no. 1:13-cv-00068-NT ) |
| v. | ) ) |
| BRIGGS & STRATTON CORPORATION, et al. | ) ) ) |
| Defendants. | ) |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

This case comes before the Court on Defendant Toro Company's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. For the reasons that follow, the motion is denied.

## BACKGROUND

According to the complaint, decedent Bryan Soucy worked as a mechanic for Bob's Tune Up in Caribou, Maine from 1978 to 1989. Complaint 17 (ECF No. 1). The complaint alleges that Soucy made repairs to small engines and other equipment, including lawn mowers, tillers, snow blowers, golf carts, snow-mobiles and ATVs; that he worked with and around components of these engines and equipment including friction materials, brakes and gaskets; and that as a result he was

exposed to, and inhaled, ingested, or otherwise absorbed asbestos fibers emanating from these components. *Id*. at 17-18

The complaint identifies eight defendants—Briggs & Stratton Corporation, Harley Davidson, Inc., John Crane-Houdaille, Inc., Kohler Co., Polaris Industries, Inc., Tecumseh Products Company, Textron, Inc., and Toro Company—as the companies that designed, manufactured, distributed, sold, licensed, or leased the asbestos-containing small engines and equipment on which Soucy worked. *Id*. at 5-12. The Plaintiff alleges that these defendants provided publications, training, and instructions directing individuals to manipulate the asbestos-containing components of their engines and equipment but failed to provide adequate warnings of the danger of inhaling, ingesting, or otherwise absorbing asbestos fibers. *Id*. at20-23, 32. The complaint alleges that, as a result of his work-related asbestos exposure to the Defendants' products, Soucy contracted mesothelioma and died. *Id*. at 26.

Toro has moved to dismiss the complaint, claiming that it fails to allege (1) which particular Toro products Soucy was exposed to, (2) when and how Soucy was exposed to these products, (3) how exposure to Toro's products caused Soucy's illness and death, (4) how Toro's product caused Soucy's illness "to the exclusion of all of the other sources" to which Soucy was exposed, and (5) how the publications, instructions, and training associated with these products were lacking, "and if so[,] what alternative warning should have been given." Mot. to Dismiss 9-10 & 13 (ECF No. 39).

2

## LEGAL STANDARD

"Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2)." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A 'short and plain' statement needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ocasio-Hernández,* 640 F.3d at 12 (quoting *Twombly,* 550 U.S. at 555). "However, in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Ocasio-Hernández,* 640 F.3d at 12 (quoting *Twombly,* 550 U.S. at 555 (citation omitted) and citing *Iqbal,* 556 U.S. at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ocasio-Hernández,* 640 F.3d at 12 (quoting *Twombly,* 550 U.S. at 557). "In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández,* 640 F.3d at 12.

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as ... fact[ ]' or '[t]hreadbare

recitals of the elements of a cause of action.'" *Ocasio-Hernández,* 640 F.3d at 12 (quoting *Twombly,* 550 U.S. at 555)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Ocasio-Hernández,* 640 F.3d at 12 (citing *Iqbal,* 556 U.S. at 681). "If that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Ocasio-Hernández,* 640 F.3d at 12 (quoting *Iqbal,* 556 U.S. at 678.) "'The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.'" *Ocasio-Hernández,* 640 F.3d at 12 (quoting *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.)).

## DISCUSSION

Toro's central objection to the complaint is that it fails to specify the particular Toro products to which Soucy was allegedly exposed. In support of its argument, Toro cites a trio of cases involving complaints of injuries from the implantation of pain pumps in the plaintiffs' shoulders. *Esposito v. I-Flow Corp.,* No. 10-cv-3883, 2011 WL 5041374 (E.D. Pa., Oct. 24, 2011); *Kester v. Zimmer Holdings, Inc.,* No. 2:10-cv-00523, 2010 WL 2696467 (W.D. Pa., June 16, 2010); and *Dittman v. DJO, LLC,* Civ. A. No. 08-cv-02791-WDM-KLM, 2009 WL 3246128 (D. Colo., Oct. 5, 2009). The plaintiffs in these cases were unable to identify which pain pump and anesthetic manufacturers were responsible for the particular product installed in the plaintiff's shoulder and were unable to specify which anesthetic was used in the pumps. Instead the plaintiffs sued numerous pain pump and anesthetic

manufacturers. *Kester* alleged that all of the manufacturers had duties to exercise reasonable care in the design and manufacture of products they placed "into the stream of commerce." *Kester*, 2010 WL 2696467 *5. The *Kester* court concluded that "the speculative and collective identification of the Defendants fails to adequately identify which Defendant caused Plaintiff's alleged injury." *Id.* at *6. The *Dittman* and *Esposito* courts reached similar conclusions. *Dittman*, 2009 WL 3246128 at *3 ("Plaintiff has no facts, only speculation, on which to base his claim that defendants' products caused or contributed to his injury."); *Esposito,* 2011 WL 5041374 at *5 ("complaint is not adequately plead if it names several defendants whose products might have been used, but does not actually identify which defendants' products allegedly caused the injury").

The pain pump cases are distinguishable from the instant case, because here the Plaintiff is not alleging that the injuries were caused by one discrete product. Rather, the Plaintiff plausibly alleges that Soucy's injuries were caused by the ingestion of asbestos fibers emanating from multiple products by multiple manufacturers over a lengthy period of time. Unlike the pain pump cases in which only one pain pump manufacturer and one anesthesia manufacturer were actually liable in each of the cases, the Plaintiff here alleges that Soucy was actually exposed to asbestos fibers from products manufactured by each of the Defendants.

The Plaintiff is not required to isolate Toro's products as "the" products responsible for the harm. The possibility that multiple products from multiple manufacturers may be responsible for a single individual's injuries has been

5

repeatedly recognized in asbestos mesothelioma cases. *See, e.g., Holcomb v. Ga. Pac., LLC*, 289 P.3d 188, 196-97 (Nev. 2012) (discussing cases and concluding that there were triable issues of fact as to whether asbestos-containing brakes from multiple manufacturers and asbestos-containing joint compounds from multiple manufacturers were substantial causes of decedent's mesothelioma).

The asbestos cases cited by Toro are also distinguishable. *See Aguirre v. Amchem Prods., Inc.*, No. CV 11-01907-PHX-FJM, 2012 WL 760627, (D. Ariz. March 7, 2012); *Bulanda v. A.W. Chesterton Co.*, No. 11 C 1682, 2011 WL 2214010 (N.D. Ill., June 7, 2011). In *Aguirre*, the complaint alleged that the defendants placed asbestos-containing products into the stream of commerce "[w]ithout any facts suggesting a temporal or geographic link between the asbestos products [the decedent] was exposed to and the asbestos products manufactured and sold by defendants . . . ." *Aguirre*, 2012 WL 760627, at *2. Although the complaint did identify the product—Kaylo—which allegedly caused the death of the plaintiff's father, it failed to allege facts sufficient to apprise the manufacturer of how it was that the decedent was exposed to Kaylo. *Id.* at *1. On that basis, the complaint was insufficient to state a plausible claim. Similarly, in *Bulanda*, the plaintiff failed to allege the type of work performed by the decedent and the type of products the decedent worked with, providing the defendant with no notice of how the decedent was exposed to asbestos, much less how he was exposed to asbestos contained in the defendant's products. *See Bulanda*, 2011 WL 2214010 at *2.

Ultimately, the Plaintiff may be required to identify the particular asbestos-containing Toro products to which Soucy was exposed. *See, e.g., Chavers v. Gen. Motors Corp.*, 79 S.W.3d 361, 369 (Ark. 2002) (under the majority "frequency, regularity, and proximity" test for causation,[1] defendants GM and AlliedSignal entitled to summary judgment because plaintiff failed to show decedent was exposed to specific asbestos-containing products manufactured by these defendants). But in some circumstances, it may *not* be necessary to identify the particular products to demonstrate liability. *See Holcomb*, 289 P.3d at 198-99 (under the "frequency, regularity, and proximity" causation test, plaintiff not required to identify particular joint compounds manufactured by defendants Kelly-Moore and Georgia Pacific because all joint compound products produced by these companies during the years of decedent's exposure contained asbestos). Regardless of whether product identification is ultimately necessary in this case, at the 12(b)(6) stage, this level of specificity is not necessary. *See Coene v. 3M Co.*, No. 10-CV-6546 CJS, 2011 WL 3555788 (W.D.N.Y., Aug. 11, 2011) (dismissal not warranted though complaint did not name the particular products allegedly manufactured by defendants).

The complaint also sufficiently alleges that the publications, instructions, and training associated with Toro's products "directed individuals to encounter and manipulate asbestos-containing parts and components in their engines and equipment"; that these publications did not include "adequate instruction as to safer

---

[1] Maine's Law Court has not yet identified which test of causation applies to asbestos product liability cases arising in Maine.

methods" for handling their products; and that they failed to warn "of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers" people would encounter in handling their products. Compl. ¶ 32. Toro has cited no cases in support of its claim that the Plaintiff is required to allege what alternative warnings Toro should have given. This may form part of a plaintiff's proof of causation, but it is not necessary to state a failure to warn claim under Maine law. *See, e.g., Koken v. Black & Veatch Const., Inc.*, 426 F.3d 39, 45 (1st Cir. 2005) (summarizing Maine law: "[a] products liability action for failure to warn requires a three-part analysis: (1) whether the defendant held a duty to warn the plaintiff; (2) whether the actual warning on the product, if any, was inadequate; and (3) whether the inadequate warning proximately caused the plaintiff's injury.").

The complaint also lets Toro know what sort of products are at issue (small motor machines including lawn mowers, tillers, snow blowers, golf carts, snow-mobiles and ATVs); the basic timeframe in which the products were produced (pre-1978 to 1989); where the products were located (Caribou, Maine); how Soucy was injured by the products (inhalation, ingestion, or absorption of asbestos fibers from friction materials, brakes or gaskets incorporated into the products); and when, where and how the exposure occurred (between 1978 and 1989 while Soucy worked on small engines as a mechanic at Bob's Tune Up in Caribou). *Cf. Aguirre*, 2012 WL 760627 (asbestos products liability complaint insufficient for failing to allege in what industries decedent worked, what types of activities he performed, or in what decades he worked). Both plausibility and notice are achieved by these allegations.

## CONCLUSION

For the reasons stated, Toro Company's motion to dismiss is **DENIED**.

SO ORDERED.

/s/ Nancy Torresen
UNITED STATES DISTRICT JUDGE

Dated this 27th day of February, 2014.